EDWARD R. REINES (Bar No. 135960)
edward.reines@weil.com
DEREK C. WALTER (Bar No. 246322)
derek.walter@weil.com
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065
Telephone: (650) 802-3000
Facsimile: (650) 802-3100

DOUGLAS W. MCCLELLAN (*pro hac vice*)
doug.mcclellan@weil.com
MELISSA L. HOTZE (*pro hac vice*)
melissa.hotze@weil.com
AMANDA C. DO COUTO (*pro hac vice*)
amanda.docouto@weil.com
WEIL, GOTSHAL & MANGES LLP
700 Louisiana Street, Suite 1700
Houston, TX 77002
Telephone: (713) 546-5000
Facsimile: (713) 224-9511

*Attorneys for Plaintiffs*
ILLUMINA, INC. AND ILLUMINA CAMBRIDGE LTD.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| ILLUMINA, INC., ILLUMINA CAMBRIDGE LTD., <br><br> Plaintiffs, <br><br> vs. <br><br> BGI GENOMICS CO., LTD., BGI AMERICAS CORP., MGI TECH CO., LTD., MGI AMERICAS, INC. and COMPLETE GENOMICS, INC., <br><br> Defendants. | Case No. 3:20-cv-01465-WHO <br><br> **PLAINTIFFS' RESPONSE TO DEFENDANTS' ADMINISTRATIVE MOTION REQUESTING LEAVE TO FILE A SUPPLEMENTAL SUBMISSION REGARDING ISSUES RAISED DURING THE PRELIMINARY INJUNCTION HEARING** <br><br> Judge:    Honorable William H. Orrick |
| COMPLETE GENOMICS INC., <br><br> Counterclaim-Plaintiff, <br><br> v. <br><br> ILLUMINA, INC., and ILLUMINA CAMBRIDGE LTD., <br><br> Counterclaim-Defendants. | |

Pursuant to the Court's direction at the May 19, 2020 claim construction hearing in related matter 19-cv-03770-WHO ("Case 3770"), Illumina, Inc. and Illumina Cambridge Ltd. ("Illumina") submit this response to Defendants' ("BGI's") Administrative Motion. (D.N. 95).

## I. BGI HAS FAILED TO SHOW GOOD CAUSE

BGI's attempt to establish good cause to file its fourth submission and sixth witness declaration in opposition to Illumina's preliminary injunction fails. BGI primarily argues that the Court invited this additional submission because "the Court indicated that additional explanation of certain issues would aid the Court in reaching a determination" and "the Court stated that additional information would be helpful to clarify Defendants' non-infringement position." D.N. 95-2 at 1:1-4. Illumina has no further information beyond what is included in BGI's terse motion because BGI violated L.R. 7-11(a), which required a meet and confer before filing this motion.

To try to show good cause for its additional infringement arguments, BGI's motion relies on a segment of the May 11 preliminary injunction hearing in which BGI's counsel cryptically suggested that, under the Court's tentative grant of the preliminary injunction, BGI could potentially modify its product documentation or limit the uses of its product to skirt an injunction. Case 3770, D.N. 161 (hearing transcript) at 14:3-7 ("Because based on your tentative, it seems like our product could be released in a way that would not infringe under Your Honor's ruling as long as we were explicit in our instructions for use and did not exploit the multiple possible uses of the product.").

The Court understandably responded that any such new circumstances were not before it. *Id.* at 14:15-19. BGI's proposed supplement does *not* address new circumstances such as proposed changes to product documentation or limits on the workings of its product – which was the subject of the Court's interchange with BGI's counsel at 14:1-19. Instead, BGI merely rewrites non-infringement arguments it has already made and that have not improved with age or repetition.

Secondarily, BGI argues that there is good cause for it to reargue irreparable harm because of the Court's question about whether a US injunction would cause harm elsewhere. *Id.* at 61:22-62:24. BGI's counsel squarely confirmed that BGI is "not claiming that there's going to be unique harm overseas based on what Your Honor does in this country." *Id.* at 62:21-23. The supplemental submission from new counsel simply counters the plain answer provided by BGI's original counsel.

BGI fails to establish good cause because it has had ample opportunity to present its positions.  The Court already granted BGI: (1) an expanded opportunity to oppose the motion with extra pages for briefing and to submit five witness declarations, (2) leave to file a surreply with eight additional exhibits, (3) consideration of a 136 slide presentation that the Court reviewed before the hearing that included new material about how BGI's products supposedly work that is repeated in its supplemental declaration, and (4) an extended oral argument.  That is enough.

## II.     BGI'S ARGUMENTS ARE WEAK, EVEN IF CONSIDERED

If BGI's arguments repeated in its supplemental submission were so meritorious, BGI would not have waited until its fourth submission to emphasize them and would have offered expert witness support from the outset.  Regardless, the more BGI's arguments are analyzed, the more their weakness is exposed, as demonstrated below.

### A.     BGI's "Introduction" Non-Infringement Argument Still Fails

BGI argues that CoolMPS does not involve removal of the azido blocking group "prior to introduction of the next complementary nucleotide," as required by Claim 13 of the '973 Patent.

BGI's non-infringement argument attempts to capitalize mischievously on a "wash step" that BGI may use.  Basically, between cycles of adding a nucleotide to a growing polynucleotide using Illumina's patented azido blocking group approach, BGI is positing that it may use a wash step using copies of the four different types of nucleotide to remove antibodies.  These "wash nucleotides" are allegedly only for cleaning and are never added to the growing DNA chain.

BGI contends that this wash step avoids infringement because the wash nucleotides must be considered the claimed "next complementary nucleotide." BGI argues that the wash nucleotides are introduced while the blocking group is still on the last nucleotide in the DNA chain because they are never intended to be part of the DNA chain and thus the claim is unsatisfied.

BGI's argument conflicts with the sensible reading of Claim 1 of the '973 Patent.  The wash nucleotides are not the claimed "next complementary nucleotide."  At the heart of the claimed method is "monitoring the sequential incorporation of *complementary nucleotides*."  See D.N. 1-1 at 86:25-26.  The "next *complementary nucleotide*" that is the subject of the introducing step refers back to these monitored complementary nucleotides that are sequentially incorporated into the DNA

chain, which is certainly present in CoolMPS. *Id.* at 86:55-56. In patent parlance, the monitored "complementary nucleotides" being incorporated in the DNA chain sequentially are the antecedent basis for "the next complementary nucleotide." *See Phonometrics, Inc. v. Northern Telecom Inc.*, 133 F.3d 1459, 1465 (Fed. Cir. 1998) ("A word or phrase used consistently throughout a claim should be interpreted consistently"); *Promos Technologies, Inc. v. Samsung Electronics Co., Ltd.*, Nos. 2019-1343, 1344, 2020 WL 1672838, at *11 (Fed. Cir. Apr. 6, 2020) ("The 'phase difference' determined in the first step is the antecedent for the 'phase difference' in the subsequent steps, and thus the claim term should be construed to have a consistent meaning").

Even though Illumina explained this compelling point at the preliminary injunction hearing (Case 3770, D.N. 161 at 33-34), BGI's fourth submission still does not address the manifest relationship between the claim phrases "monitoring the sequential incorporation of **complementary nucleotides**" and "the next **complementary nucleotide**." BGI's silence amidst so many words speaks volumes.

The wash nucleotides are not "sequentially incorporated" into the DNA chain. They only clean antibodies and thus they are not even eligible to be the "next complementary nucleotide" in the claim. They are washed away before incorporation occurs. They also are not "complementary" nucleotides because they never hybridize (attach) to a complementary nucleotide as part of the sequential incorporation process. The mere fact of being a nucleotide does not qualify every nucleotide as being a complementary nucleotide. Only those that are part of the growing chain in the sequencing by synthesis process are the **complementary** nucleotides of the claim.

BGI argues that for every wash step its mix of wash nucleotides include all four types of nucleotides A, C, T and G. The coincidence that the actual "next complementary nucleotide" that is part of "the sequential incorporation of complementary nucleotides" may also be an A, C, T or G nucleotide cannot render the wash nucleotides to be the "next complementary nucleotide." Such a superficial argument neglects that the physical "next complementary nucleotide" that is sequentially incorporated in the DNA chain is a different physical molecule than BGI's wash nucleotides.

BGI's argument also conflicts with the meaning of "introduction" in the '973 Patent. In the specification, "introduction" in the relevant context is used to refer to the introduction of the

nucleotide into the growing DNA chain. The patent expressly refers to "incorporation" of a blocked nucleotide as "blocking" the "introduction" of the next nucleotide into the growing chain. *See* D.N. 1-1 at 4:47-55. Claim 11 of the '444 Patent also shows the patent uses the term "introduction" to mean introduction into the growing chain. BGI argues that, in the context of the claim, "introduction" means only introduction into the mixture. But there is no context to support BGI's "mixture" argument. As shown above, the nucleotides of the claim are introduced into the growing chain, not into the mixture for an ancillary use such as cleaning.

Moreover, BGI's admission that the term "introduction" ***can*** indeed be used to refer to introducing a modified nucleotide into the growing DNA chain undermines its central argument. BGI's central argument has been that "introduction" must mean something other than introduction into the growing chain because otherwise it would be inexplicably duplicative of the word "incorporate," which is also used in the patent. BGI's admission that the patent repeatedly ***does*** exactly that in the patent outside Claim 1 eliminates its argument that the term cannot be understood that way in this patent as a matter of rigid grammatical consistency.

Finally, instead of relying on the uses of "introducing" relevant to the modified nucleotides of the patent, BGI is reduced to relying on the use of the term "introduced" as it relates to palladium salts or phosphines, which is totally off-base. These uses of the term are remote from the core claimed concept of modified nucleotides being introduced into the growing DNA chain and are thus unhelpful to the analysis. BGI's only non-infringement argument on the '973 patent lacks merit, which helps explain why BGI instructed its technical experts to steer clear of the issue from the start and why it still has not submitted a non-infringement expert opinion.

**B.     BGI's "Introduction" Argument Ignores The '444 Patent**

BGI ignores its straightforward infringement of the '444 Patent. Infringement of that patent is an independent basis to support the preliminary injunction and BGI does not even assert its "introduction" argument for that patent. Despite another opportunity to submit evidence, BGI still does not submit an expert opinion alleging non-infringement of the '444 Patent. Nor does it identify a claim term in the '444 Patent that is not satisfied.

Dr. Burgess explained – without challenge – that, when applying Claim 3, the presence of

1  an azidomethyl blocking group establishes that Z is satisfied and the remaining requirements of
2  Claim 1 relating to R″ are inapplicable.  D.N. 13 (Burgess Decl.) at ¶42 ("Because Illumina is solely
3  asserting claim 3, which does not require R″, structures (1) through (4) do not require analysis here.
4  Accordingly, claim 1's additional description about R″ and the structures (1) through (4) that contain
5  R″ similarly does not require analysis here.").

6  BGI's expert contradicts BGI's insinuation that maybe an R″ related limitation might not be
7  satisfied.  His prior art analysis literally *relies* on (and quotes approvingly) Dr. Burgess's testimony
8  that when using the azido of Claim 3, the R″ related elements of Claim 1 are not even applicable.
9  D.N. 57-3 (Sutherland Decl.) at 48.  This explains why BGI's expert admits that when azidomethyl
10 is the option for Z in Claim 1, as required by Claim 3, the requirement of Z is met without more.
11 D.N. 76-5 (Sutherland Depo.) at 54:3-9 ("Z in the context of claim 1 is an azidomethyl, if you're
12 applying claim 3").

### C. BGI's Attempt To Recant Its KOL Admission Should Be Rejected

BGI argues that it will be harmed if it cannot sell its infringing products to KOLs in the United States because that will harm it outside the United States.  That is the opposite of what BGI's original counsel told this Court upon specific questioning at the preliminary injunction hearing. Case 3770, D.N. 161 at 61-62.  BGI's retention of new counsel should not protract these proceedings, as the positions of prior counsel are second-guessed.  Regardless, BGI should not be using United States infringement to harm Illumina commercially anywhere in the world.  In addition, there are many KOLs outside the United States, including in Canada, Shenzen, Singapore, and Beijing. D.N. 75-10 (Smith Depo.) at 43:6-45:4; D.N. 75-12 (Rogers Depo.) at 86:14-24; 88:11-17.  BGI's supplemental evidence fails to explain in any meaningful way why those KOLs are not good enough for BGI.  And BGI's argument is flatly inconsistent with its brag that it has placed 1,600 systems with 460 customers in 38 countries – without any United States KOL placements.

*\*\*\**

Finally, on May 20, 2020, the Federal Circuit issued *McRO, Inc. v. Bandai Namco Games America Inc.*, Appeal No. 2019-1557, Doc. 88 (Fed. Cir.).  That case supports this Court's enablement analysis in its tentative ruling and is worthy of review.

Dated: May 21, 2020

Respectfully submitted,

WEIL GOTSHAL & MANGES LLP

By: */s/ Edward R. Reines*
    Edward R. Reines (Bar No. 135960)
    Derek C. Walter (Bar No. 246322)
    Douglas W. McClellan (*pro hac vice*)
    Melissa L. Hotze (*pro hac vice*)
    Amanda C. Do Couto (*pro hac vice*)

*Attorneys for Plaintiffs*
ILLUMINA, INC. AND ILLUMINA CAMBRIDGE LTD.