| | |
|---|---|
| EDWARD R. REINES (Bar No. 135690) | DAVID BILSKER (Bar No. 152383) |
| edward.reines@weil.com | davidbilsker@quinnemanuel.com |
| DEREK C. WALTER (Bar No. 246322) | QUINN EMANUEL URQUHART & |
| derek.walter@weil.com | SULLIVAN, LLP |
| WEIL, GOTSHAL & MANGES LLP | 50 California Street, 22nd Floor |
| 201 Redwood Shores Parkway | San Francisco, CA 94111 |
| Redwood Shores, CA 94065 | Telephone: (415) 875-6600 |
| Telephone: (650) 802-3000 | Facsimile: (415) 875-6700 |
| Facsimile: (650) 802-3100 | |
| | KEVIN P.B. JOHNSON (Bar No. 177129) |
| DOUGLAS W. MCCLELLAN (*pro hac vice*) | kevinjohnson@quinnemanuel.com |
| doug.mcclellan@weil.com | QUINN EMANUEL URQUHART & |
| MELISSA L. HOTZE (*pro hac vice*) | SULLIVAN, LLP |
| melissa.hotze@weil.com | 555 Twin Dolphin Drive # 560 |
| AMANDA C. DO COUTO (*pro hac vice*) | Redwood City, CA 94065 |
| amanda.docouto@weil.com | Telephone: (650) 801-5000 |
| WEIL, GOTSHAL & MANGES LLP | Facsimile: (650) 801-5100 |
| 700 Louisiana Street, Suite 1700 | |
| Houston, TX 77002 | ANNE S. TOKER (*pro hac vice*) |
| Telephone: (713) 546-5000 | annetoker@quinnemanuel.com |
| Facsimile: (713) 224-9511 | JOSEPH MILOWIC III (*pro hac vice*) |
| | josephmilowic@quinnemanuel.com |
| Attorneys for Plaintiffs | QUINN EMANUEL URQUHART & |
| | SULLIVAN, LLP |
| | 51 Madison Avenue, 22nd Floor |
| | New York, New York 10010 |
| | Telephone: (212) 849-7000 |
| | Facsimile: (212) 849-7100 |
| | |
| | Attorneys for Defendants |

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| ILLUMINA, INC. ILLUMINA CAMBRIDGE LTD., | Case No. 3:19-cv-03770-WHO Case No. 3:20-cv-01465-WHO |
| Plaintiffs, | **JOINT LETTER REGARDING INVENTOR DEPOSITIONS** |
| v. | |
| BGI GENOMICS CO., LTD., BGI AMERICAS CORP., MGI TECH CO., LTD., MGI AMERICAS, INC., and COMPLETE GENOMICS INC., | |
| Defendants. | |

I. **DEFENDANTS' POSITION**

Defendants respectfully request an order compelling Plaintiffs to: (1) promptly take all steps necessary to enforce their contractual rights to have each inventor appear for deposition in the United States; and (2) regularly update the Court on all steps taken.

This issue is time sensitive. Defendants are currently operating under a preliminary injunction which they intend to challenge on a full record. The parties are currently negotiating an expedited discovery and trial schedule. But, if the inventor depositions are delayed, as Plaintiffs' wait and see proposal would dictate, Defendants will not be able to seek a speedy resolution of the case and will be subject to an injunction for much longer than they need to be. For this reason, Plaintiffs should be ordered now, to take all steps necessary to enforce their contractual agreements with each of the inventors to make them available for deposition – steps Plaintiffs should have taken long ago.

The relief requested is not unique. Courts have granted motions to compel in similar circumstances. *See, e.g., Amgen, Inc. v. ARIAD Pharmaceuticals, Inc.*, 06–259–MPT, 2007 WL 1425854, at *1-3 (D. Del. May 14, 2007) (granting motion to compel patent owner to secure compliance of 3 foreign-based inventors' contractual obligations to testify in U.S., requiring updates on steps taken; and rejecting arguments the depositions were unnecessary given availability of 10 other inventors or that the accused infringer should go through the Hague; noting importance of each inventor in complex genomics case); *Industrial Technology Research Institute v. LG Corp.,* 12-cv-393-IEG, 2012 WL 12883204, at *1-3 (S.D. Cal. Dec. 4, 2012) (granting motion to compel patent owner to enforce assignment agreement and make foreign-based inventor sit for deposition in the U.S.); *Minebea Co., Ltd. v. Papst,* 370 F. Supp. 2d 302, 308-09 (D.D.C. 2005) (requiring patent holder to make inventor available in U.S.); *In re Nifedipine Capsule Patent Lit.,* 1989 WL 111112 (S.D.N.Y. Sept. 20, 1989) (requiring plaintiff to produce inventors in U.S. or be subject to sanctions).

Despite the fact that Plaintiffs first filed infringement actions before this Court against Defendants more than one year ago and against other companies based on some of the same patents as far back as 2016, Plaintiffs have not taken adequate steps to provide the inventors of its patents for deposition. Though Defendants originally raised this issue 9 months ago, to date, Plaintiffs have

only agreed to provide 2 of 9 inventors for deposition.[1] As all the inventors are located outside the United States, this is a significant issue.

The inventors are contractually obligated to assist Plaintiffs in these actions. In each of the inventors' assignment agreements with Plaintiff, the inventor expressly "covenants and agrees" to "testify in any legal proceeding . . . to . . . enforce [the patent] in the United States." Ex. A. Therefore, Plaintiffs have the legal right and obligation to compel the inventors to testify in this proceeding and cannot sit idle or force Defendants to go through the Hague to obtain the depositions, if Defendants are even able to use this process to compel the inventors to appear. Moreover, the Hague could be very slow and cumbersome and delay a final resolution.

The named inventors are, not surprisingly, often the key witnesses in patent cases. Here, Defendants have raised defenses under § 112 because the asserted patents lack a written description sufficient to enable one of skill in the art to make and use the claimed inventions – for the very reason that the inventors did not possess the claimed inventions at the time the priority applications were filed. Critical evidence needed to establish these defenses is likely in the possession of *one or more* the named inventors. *See, e.g., Nuvo Pharm. (Ir.) Designated Activity Co. v. Dr. Reddy's Labs. Inc.*, 923 F.3d 1368, 1381 (Fed. Cir. 2019) (inventor testimony "illuminates the absence of critical description in this case" and supports finding of invalidity); (affirming jury verdict of invalidity supported by inventor testimony: "inventors testified they did not work with or test any analogs of rapamycin prior to filing, and "no evidence contradicts the inventors' deposition testimony or otherwise indicates that the inventors had possession of the full scope of the invention as claimed." The court concluded that "[l]ogically, the inventors could not have described a knowledge that they did not possess."); *Burroughs Wellcome Co. v. Barr Labs., Inc.*, 40 F.3d 1223, 1229 (Fed. Cir. 1994) ("The alleged inventors in *Fiers* and *Amgen* claimed conception of their respective inventions before they knew relevant chemical structure—the nucleotide sequence—so the courts found no conception until experimentation finally revealed that structure.")

---

[1] At one point, Plaintiffs suggested they were willing to accept service on behalf of 4 of the 9 inventors, but recent communications suggest they may only offer 2 of the inventors for deposition.

Here, Plaintiffs admit the inventors are not "fungible" and each will have different knowledge. Plaintiffs cannot pick and choose who to provide by not taking every step necessary to bring those contractually bound who may not be as supportive of its positions. For the inventors Illumina is refusing to produce, there appear to exist a disproportionately smaller number of lab notebooks. Depositions will confirm the extent of their notes or whether they have any in their personal possession. For example, for Dr. Balasubramanian, for whom Plaintiffs have produced *zero* lab notebooks or notes, even Plaintiffs acknowledge the importance of his contributions. Finally, many of the notebooks have large, unexplained gaps, or handwriting that is difficult to read or that require context from the writer. None of the "available" inventors can provide the necessary background to understand and explain notebooks that they did not write.

**II.     PLAINTIFFS' POSITION**

BGI's demand that Illumina essentially threaten and file foreign breach of contract suits against former employee inventors to appear for deposition almost two decades after their work on the patented inventions is unwarranted. BGI's request fails because the justification for the depositions is far outweighed by the imposed (and ultimately impossible) burden.

Like other defendants before it, BGI has failed to identify a substantial question as to the validity of Illumina's patents. Both Judge Alsup in *Qiagen* and Judge Orrick in these cases have decisively reached this conclusion after extensive briefing and scrutiny. *See Illumina, Inc. v. Qiagen*, NV, 207 F. Supp. 3d 1081 (N.D. Cal. 2016); Dkt. 185 at 9-17; Dkt. 81 at 8-9.[2] In this extraordinary context, Illumina for months has been asking BGI for an identification of the issues worthy of discovery from nine inventors including third parties many years removed. BGI has failed to identify any specific issue despite the many years it has been scrutinizing these patents.

Even in this letter, BGI is vague. It appears to suggest that the general topic might be either a written description or enablement defense, although even that is vague. During the injunction proceedings, BGI did not identify written description as even an issue and its enablement arguments were resoundingly rejected by Judge Orrick as lacking merit, just as Judge Alsup had before him.

---

[2] All docket citations to Plaintiffs' portion of this brief are to Case 3:19-cv-03770-WHO.

1  Judge Orrick found that BGI's enablement arguments were (a) divorced from the claim elements,
2  (b) ignored the correct legal standard, (c) were "belied by the numerous previous proceedings
3  involving Illumina's patents," and (d) were inconsistent with BGI's prior admissions that "a
4  POSITA would be able to practice various aspects of the invention that BGI now contends are not
5  enabled." Dkt. 185 at 9-13.  Although BGI plans to appeal aspects of Judge Orrick's decision, not
6  these.  Interpreting its citations, BGI appears to shift to argue that the written description inquiry
7  centers on inventor testimony.  However, it is horn book law that "the test requires an objective
8  inquiry into the four corners of the specification from the perspective of a person of ordinary skill
9  in the art." *Ariad Pharmaceuticals, Inc. v. Eli Lilly and Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010)
10 (en banc).  BGI has no excuse for failing to identify valid issues deserving of the broad and
11 expensive discovery that it believes warrants nine inventor depositions given that both enablement
12 and written description are ***objective*** inquiries from the patent.

13      Notwithstanding the lack of a coherent justification for the requested discovery, Illumina
14 has agreed to present two of the inventors at Illumina for deposition and has produced almost 50
15 lab notebooks relating to the inventors' work.  Those depositions could have been taken a long time
16 ago.  The remaining seven inventors at issue are foreign nonparties that Illumina does not control,
17 and most of them left the company over a decade ago.  None of them are managing agents.  One of
18 the nonparty inventors is ill and being treated for cancer, two work for Illumina competitors and
19 are not speaking to Illumina, one left the industry years ago and is now a school teacher in The
20 Netherlands, and another cannot be found.  Illumina informed BGI that it does not expect to bring
21 to trial inventors that are not deposed.  BGI's added demand that "each inventor appear for
22 deposition in the United States" during a pandemic separately justifies denial of its motion.

23      Even if this nine-inventor discovery-fest were justified, the proper procedure is to seek
24 foreign depositions through the Hague Convention.  *See, e.g.*, *Koninklijke Philips N.V. v. Wangs*
25 *All. Corp.*, No. CV 14-12298-DJC, 2018 WL 283893, at *1-2 (D. Mass. Jan. 2, 2018) (denying
26 motion to compel deposition of inventor based on former-employee status, "uncertain relevance,"
27 and because defendant had not attempted to depose inventor "through the procedures available in
28 the Hague Convention"); *Medpointe Healthcare Inc. v. Apotex Inc.*, No. Civ. 06-164 SLR, 2007

1  WL 211202, at *2 (D. Del. March 30, 2010) (holding that inventor depositions should occur "under
2  the rules of the Hague Convention" in part because the patent assignments did not include "a
3  specific assent to be subjected to an American-style deposition, governed by American discovery
4  laws, over and above customary (and more restrictive) German discovery practices which would
5  have been most familiar to [the inventor] at the time of signing"); *Murata Mfg. Co., Ltd. v. Bel*
6  *Fuse, Inc.*, 242 F.R.D. 470, 480 (N.D. Ill. 2007) (holding that patent assignment agreement
7  requiring inventor to "do all acts necessary" for the enforcement and defense of the patent did not
8  require inventor to sit for an American-style deposition under U.S. discovery laws in the U.S.).

9  BGI's cited cases are inapposite because the circumstances are so different. Here, the
10 relevant invalidity theories have already been squarely rejected by multiple courts, Illumina has
11 agreed it will not call at trial undeposed inventors, the events are almost two decades old, and **seven**
12 foreign third party inventors are at issue beyond those that will be deposed. BGI's cited cases also
13 predate the changes in the Federal Rules in 2015 under which "[t]he test going forward is whether
14 evidence is 'relevant to any party's claim or defense,' not whether it is 'reasonably calculated to
15 lead to admissible evidence.'" *Apple Inc. v. Qualcomm Inc.*, Case No. 3:17-cv-00108-GPC-MDD,
16 2018 WL 3681893, at *4 (S.D. Cal. Aug. 14, 2018).

17 Ultimately, without even showing the depositions are warranted, BGI seeks to compel
18 Illumina to threaten these nonparties with legal action in a foreign court if they do not agree to
19 waive their Hague Convention rights. Not only is that unjustified and unfair, BGI has not carried
20 its burden to show that a foreign court would do so. The assignments were made in the UK over a
21 decade ago between a UK company and UK residents. There is no reason to believe that a UK
22 court would enforce the assignments to require these nonparties to waive their Hague Convention
23 rights or submit to United States depositions. If BGI were to attempt to meet its burden otherwise,
24 Illumina would respectfully request leave to submit a declaration from a UK law expert in response
25 showing to the contrary. Illumina also offers to submit such a declaration at the Court's request.

26 Since BGI has not met its burden to show that the depositions are warranted and has not
27 taken any inventor depositions or even taken the first step to follow the Hague Convention
28 protocols, its motion should be denied.

|   |   |   |
|---|---|---|
|   | | Respectfully submitted, |
| Dated: | August 10, 2020 | QUINN EMANUEL URQUHART & SULLIVAN, LLP |
|   |   | By:   /s/Joseph Milowic III |
|   |   | Attorney for Defendants |
| Dated: | August 10, 2020 | WEIL GOTSHAL & MANGES LLP |
|   |   | By:   /s/ Melissa Hotze |
|   |   | Attorney for Plaintiffs |

### III. CERTIFICATION

I, Joseph Milowic III, am the ECF User whose identification and password are being used to file this Joint Letter Regarding Inventor Depositions. In compliance with Northern District of California's Civil L.R. 5-1(i)(3), I hereby attest that Melissa Hotze has concurred in this filing.

Respectfully submitted,

Dated: August 10, 2020            By:      */s/ Joseph Milowic III*
                                           Joseph Milowic III
                                           Attorney for Defendants