UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ILLUMINA INC., et al.,<br><br>　　　　Plaintiffs,<br><br>　v.<br><br>BGI GENOMICS CO., LTD., et al.,<br><br>　　　　Defendants. | Case No. 20-cv-01465-WHO   (TSH)<br><br>**DISCOVERY ORDER**<br><br>Re: Dkt. No. 200 |

We are here on a joint discovery letter brief concerning some of Defendants' interrogatory ("rog") responses and responses to requests for production ("RFPs"). ECF No. 200. The Court held a hearing on November 30, 2020, and now issues this order.

**A.    Design Around**

Our first dispute concerns Illumina's attempt to take discovery into any efforts Defendants may have made to design around Illumina's patents. Illumina's rog 11 asks Defendants to "[s]et forth in detail each change and/or modification that You have made, or plan to make, to the design, operation, or use of the BGI Accused Products as a result of or in response to Your becoming aware of the Illumina Asserted Patents or the filing of this lawsuit or any other legal action brought by Illumina against any of the Defendants involving Related Patents, and identify all persons with knowledge of those changes or modifications." ECF No. 200-1, Ex. 1. Its RFP 44 asks Defendants to produce "[a]ll Documents and Things relating to any efforts by Defendants to design or modify sequencing products that are influenced by the existence or substance of the Patents-in-Suit, including all laboratory notebooks, logs, records, files, and models relating to such an effort." *Id.*, Ex. 4. And its rog 15 asks Defendants to "set forth in detail each change and/or modification that You have made, or plan to make, to the design, operation, or use of the BGI

Accused Products for any purpose." *Id.*, Ex. 1.

First the Court must decide if this discovery is relevant and proportional. Then it must decide if it is protected by the attorney-client privilege or attorney work product doctrine.

### 1. Relevance and Proportionality

Efforts by a defendant to design around a plaintiff's patent can be relevant to a patent infringement lawsuit in several ways. As one example, a legitimate attempt to design around a patent and a good faith belief that one has done so may undercut a finding of willfulness. *See Saint-Gobain Autover USA, Inc. v. Xinyi Glass North America, Inc.*, 707 F. Supp. 2d 737, 751 (N.D. Ohio 2010) (observing that "[d]esigning or inventing around patents to make new inventions is encouraged" and that "it is well settled that an accused infringer does not act willfully merely because its attempts to avoid infringement by redesigning around the patents prove unsuccessful"). By contrast, dragging one's heels and belatedly attempting a design around only after being sued can support a finding of willfulness. *See id.* ("Balanced against this weak offering of proof is the previously mentioned evidence demonstrating that Xinyi dragged its heels in investigating its potential liability under the patents and, in fact, did not even attempt to redesign its products until almost a year after the present lawsuit was filed. This factor clearly weighs in favor of enhancement.").

Further, an unimplemented but available design around may tilt in favor of issuing a permanent injunction because it can show that the balance of hardships favors an injunction. *See Douglas Dynamics, LLC v. Buyers Products Co.*, 717 F.3d 1336, 1345 (Fed. Cir. 2013) ("Buyers represented to the district court that its new design around was ready for implementation. . . . If indeed Buyers had a non-infringing alternative which it could easily deliver to the market, then the balance of hardships would suggest that Buyers should halt infringement and pursue a lawful course of market conduct.").

In addition, an unimplemented but available design around can be relevant to damages. For reasonable royalty damages, if the infringer "had the necessary equipment, know-how, and experience to implement [the] non-infringing alternative[]," that could be relevant to the *Georgia Pacific* factor inquiring into the utility and advantages of the patent property over old modes or

1   devices. *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 2011 WL 197869, *3 (E.D. Tex. Jan. 20,
2   2011). Similarly, for lost profits damages, an unimplemented but available design around may
3   show the existence of a non-infringing substitute that undercuts damages. *See Grain Processing*
4   *Corp. v. American Maize-Products Co.*, 185 F.3d 1341, 1353 (Fed. Cir. 1999) ("Acceptable
5   substitutes that the infringer proves were available during the accounting period can preclude or
6   limit lost profits; substitutes only theoretically possible will not.").

7   Here, Illumina invokes all of these theories. Illumina says it needs discovery into what
8   efforts Defendants have made toward a design around. If there are none, that may help show
9   willfulness. If Defendants are going to argue at trial that they did make good faith attempts at
10  designing around, Illumina wants to learn that in discovery so it won't be surprised at trial. If
11  Defendants have a design around ready to go in the event that Judge Orrick issues a permanent
12  injunction, Illumina argues that's relevant to the balance of hardships. Illumina also says that if it
13  comes up with evidence of domestic sales, offers for sale, use, or imports or exports of the accused
14  products, it may have lost profits or reasonable royalty damages, and the availability or
15  nonavailability of a design around would be relevant to both.

16  Defendants do not have much of a response. They argue in the letter brief that because the
17  accused products have never been commercialized in the U.S., design around could not have
18  happened. However, that is a complete non sequitur. If Defendants mean to say that as a factual
19  matter they did not make any efforts to design around Illumina's patents, they can say that clearly
20  in a rog response rather than hinting at that in a discovery letter brief.

21  Defendants vigorously object to any discovery into *planned* product changes for products
22  that have not yet been released in the U.S. But as discussed above, case law holds that
23  unimplemented but available design arounds are relevant. Discovery into planned modifications
24  to avoid infringing Illumina's patents is discovery into whether those design arounds are available.
25  Defendants argue that discovery is framed by the pleadings and that Illumina's complaint is
26  directed at the accused products as they exist and not new or modified products that may be
27  released in the future. While that is true, as explained above, the existence of non-infringing
28  alternatives is relevant to Illumina's existing claims for several reasons.

3

Defendants also argue that Illumina's damages arguments do not make sense because Defendants never committed domestic acts of infringement (or exported under section 271(f)). However, discovery is ongoing and that is a contested factual issue. The Complaint alleges domestic sales, offers to sell, uses, imports and exports. Complaint ¶¶ 65, 67, 146, 148, 149, 232, 234, 235. Illumina is entitled to take discovery into those allegations, including what its damages would be if it can prove that conduct occurred, and design around evidence is relevant to damages.

Accordingly, the Court finds that rog 11 and RFP 44 are relevant and proportional. Rog 15, however, is a different matter. As a reminder, it asks Defendants to "set forth in detail each change and/or modification that You have made, or plan to make, to the design, operation, or use of the BGI Accused Products *for any purpose*." (emphasis added). This rog goes way beyond discovery into design around, which by definition is limited to efforts to avoid infringement. Asking Defendants to detail *every* change or modification they made or plan to make to the design, operation or use of the accused products – no matter what the reason – seeks irrelevant and disproportionate information. The Court therefore limits rog 15 to the requested information *for the purpose of designing around Illumina's patents-in-suit*.

### 2. Privilege and Work Product

Defendants refuse to answer either rog 11 or 15, citing the attorney-client privilege and attorney work product doctrine. Their answer to RFP 44 asserts privilege and work product and says they will produce non-privileged materials, if any exist, but given their total refusal to answer rogs 11 and 15, Defendants have made clear that they think any information at all about design around is privileged and work product.

The Court disagrees. "By definition . . . all 'design-around' product development requires . . . consultations" with counsel. *Upjohn Co. v. Mova Pharm. Corp.*, 936 F. Supp. 55, 57 (D.P.R. 1996). "Moreover, it is true, in a gross sense, that the formulations were prepared in 'anticipation of litigation.'" *Id*. After all, "[t]he goal is to avoid litigation by developing a product that does not infringe upon the 'designed-around' patent." *Id*. "A lawyer is integral to the process; but to characterize such interchanges as protected attorney-client communications or work product would pull both doctrines from their respective roots." *Id*. "Permitting the discovery Upjohn

4

1   seeks would discourage neither prospective attorney-client communications nor attorney diligence,
2   because the information would be generated (and therefore discoverable) regardless of the
3   attorney's involvement.  The trial and error testing of prospective formulations will always be
4   integral to research and development.  This aspect of the scientific method cannot be immune from
5   discovery simply because an attorney was involved in the process." *Id*.

6   Courts therefore routinely allow discovery into design around, notwithstanding that at
7   some level it's all done ultimately at the direction of counsel and with a view toward litigation.
8   *See, e.g., Visteon Global Techs, Inc. v. Garmin Int'l, Inc.*, 903 F. Supp. 2d 521, 520 (E.D. Mich.
9   2012) (ordering in-house counsel to testify about design around); *Thermos Co. v. Starbucks Corp.*,
10  1998 WL 781120, *5 (N.D. Ill. Nov. 3, 1998) ("Information relating to redesign efforts [is] not
11  immune from discovery simply because an attorney was involved in the process.").  An important
12  reason for this is that this type of discovery seeks to learn things the company has done or plans
13  that it has made, and "[f]acts are not protected by the work product doctrine." *Shared Memory*
14  *Graphics LLC v. Apple, Inc.*, 812 F. Supp. 2d 1022, 1026 n.4 (N.D. Cal. 2010).  Accordingly, the
15  Court holds that Defendants' efforts at designing around Illumina's patents are not protected by
16  the attorney-client privilege or the attorney work product doctrine.

17  Having said that, actual attorney-client communications about a design around are still
18  privileged, and an attorney-written memo with thoughts and impressions about a design around is
19  still work product.  The Court's holding is simply that Defendants cannot declare off limits the
20  entire subject matter of designing around Illumina's patents.  Any modifications Defendants have
21  made to the accused products, or any plans Defendants have made to modify the accused products,
22  to design around Illumina's patents are not privileged or work product.

23  Rog 11 and rog 15 (as modified by the Court) do not ask for any information protected by
24  privilege or work product, and the Court orders Defendants to answer them.  The Court also orders
25  Defendants to produce non-privileged, non-work product documents in response to RFP 44,
26  clarified by this order's explanation of where privilege and work product end.  There may be some
27  privileged or work product documents responsive to RFP 44, and those should be logged, unless
28  they are outside the parties' agreement about what documents should be logged (for example, the

5

1  Court understands the parties have agreed not to log communications with outside counsel
2  retained in this litigation).

### B.  Discovery into Enzymes and Polymerases

Now we switch gears to a completely different subject, namely what discovery Illumina is allowed to take into Defendants' use of enzymes and polymerases. (A polymerase is a type of enzyme.) Illumina's rog 16 asks Defendants to "[i]dentify and describe in detail each polymerase that has been used for sequencing with StandardMPS or CoolMPS, including the amino acid sequence and supplier of each polymerase, along with Defendants' research and development efforts related to each such polymerase." ECF No. 200-2, Ex. 2. Illumina's RFP 103 asks for "[a]ll Documents and Things related to each enzyme that is or has been used for sequencing using StandardMPS or CoolMPS, including the amino acid sequence of those enzymes." RFP 104 requests "[a]ll Documents and Things relating to Defendants' 'identification of a superior sequencing polymerase screened from tens of thousands of mutants,' as discussed on the CPAS tabs at httpd://en.mgitech.cn/products/." ECF No. 200-2, Ex. 5.

The dispute between the parties pretty much comes down to relevance. Illumina says the documents are relevant. Defendants say they are not and that Illumina is taking discovery into claims it has not asserted in this lawsuit.

Ah, but what claims are those? The Complaint is coy about this. Count one alleges that Defendants infringe "claim 13 of the '973 Patent," ECF No. 1, ¶ 65; count two alleges that Defendants infringe "claim 3 of the '444 Patent," *id*. ¶ 146; and count three alleges that Defendants infringe "claim 1 of the '025 Patent," *id*. ¶ 232. But the 63 paragraphs that precede count one, and which are incorporated by reference into each of the counts, contain suggestions of additional infringement. Paragraphs 50, 51 and 53 say that Defendants infringe "at least claim 13 of the '973 Patent," suggesting that more than claim 13 might be at issue. Similarly, paragraphs 54, 55 and 57 state that Defendants are infringing "at least claim 3 of the '444 Patent." And paragraph 59 asserts that Defendants are infringing "at least claim[s] 1-8 of the '025 Patent."

The Court reviewed each of the claims that is specifically referred to in the Complaint, and none of them refers to enzymes or polymerases, the subject of this discovery. But Illumina's "at

least" formulation in the Complaint left the Court unsure whether those were all the claims at issue in this lawsuit. However, there is a good way to definitively answer that question. Patent Local Rule 3-1 requires a party claiming patent infringement to serve infringement contentions, and subparagraph (a) of that Rule requires the contentions to identify "[e]ach claim of each patent in suit that is allegedly infringed by each opposing party . . ." This Rule takes the guesswork out of knowing what claims are at issue. Accordingly, the Court ordered Illumina to file its infringement contentions, ECF No. 209, which it has done. ECF No. 211.

Illumina's infringement contentions don't add any claims for the '973 and '444 patents, but they sure do change the picture for the '025 patent. Illumina contends Defendants infringe claims 1-21, 27-29, 31, 33-36, 38, 39, 41-44, 46, 47, 49-52 and 54 of the '025 patent. ECF No. 211-6. Holy smokes did that claim get broader in the infringement contentions!

This matters because independent claim 9 in the '025 patent claims "[a] kit comprising a plurality of nucleotides, each having a ribose or deoxyribose sugar moiety and a base linked to a detectable label via a cleavable linker, wherein the sugar moiety comprises a protecting group attached via the 3' oxygen atom, and said protecting group comprises an azido group that can be modified or removed to expose a 3' OH group, and wherein the detectable label linked to each nucleotide can be distinguished upon detection from the detectable labels used for structurally different nucleotides." Dependent claim 12 claims "[t]he kit of claim 9, further comprising an *enzyme* and buffers appropriate for the action of the *enzyme*." (emphasis added) And dependent claim 13 claims "[t]he kit of claim 12, wherein the *enzyme* is a terminal transferase, a *polymerase* or a reverse transcriptase." (emphasis added) So, now enzymes and polymerases are relevant to at least two of the asserted claims.

Further, in its infringement contentions for claims 12 and 13, Illumina contends that "BGI's step-wise sequencing-by-synthesis involves incorporation of nucleotides using an enzyme and appropriate buffers" (claim 12) and "BGI's step-wise sequencing-by-synthesis involves incorporation of nucleotides using at least a polymerase" (claim 13). ECF No. 211-12. For claim 12 Illumina also says that "Defendants host on their website a CoolMPS manual that discloses certain enzymes and buffers appropriate for the action of the enzyme as part of the CoolMPS

chemistry." *Id.*

These discovery requests are directed to the use of enzymes and polymerases for sequencing (or the identification of a better sequencing polymerase), so they seem directly relevant to the manner in which Illumina contends Defendants infringe claims 12 and 13 of the '025 patent. Defendants do not have a good response to that. Their real gripe is that after rog 16 and RFP 103 request discovery about a relevant topic (rog 16: "[i]dentify and describe in detail each polymerase that has been used for sequencing with StandardMPS or CoolMPS . . ."; RFP 103: "[a]ll Documents and Things related to each enzyme that is or has been used for sequencing using StandardMPS or CoolMPS . . ."), each discovery request then has an "including" clause that asks for the amino acid sequence for the polymerase or enzyme. Defendants cry foul, saying it's not really in dispute that their products use enzymes such as polymerases and that Illumina has not asserted claims that relate to specific amino acid sequences.

More precisely, Defendants make two arguments. First, they argue that Illumina should not be able to go one inch past the language of the patent in taking discovery. Because claim 12 refers to "an enzyme," and claim 13 refers to an "enzyme" that "is a terminal transferase, a polymerase or a reverse transcriptase," once Defendants admit to using an enzyme and a polymerase, they say Illumina may learn nothing further about the enzyme or polymerase because *any* enzyme or polymerase will satisfy claims 12 and 13 – so, who cares which ones they used? Second, they argue that by taking discovery that may be relevant to unasserted claims, Illumina is improperly trying to take discovery to set up a new lawsuit.

The Court disagrees. As to the second point, the Court's view is that Illumina is allowed to take discovery on the claims that it is asserting, and the Court is not going to reason backwards from unasserted claims to "carve out" otherwise relevant discovery. As to the first point, Defendants' not-one-inch-past-the-patent argument is weak on its own terms. Claim 12 claims the kit described in claim 9 "further comprising an enzyme and buffers appropriate for the action of the enzyme." So, it seems like we need to know more about the enzyme, beyond just the fact that there is one, to know whether this limitation has been met. But the Court also rejects the not-one-inch-past-the-patent argument. Illumina is entitled to take discovery into the factual question of

8

exactly how Defendants allegedly infringed (or were planning to before they were enjoined) – namely, what their specific conduct was, how they did it, and what particular materials they used to carry it out. Illumina is allowed to present a case to the trier of fact about specific people doing particular things in certain ways. It's not good enough for Defendants to say "we used an enzyme, and that's all we're going to tell you." If you sue someone for copyright infringement for making a thousand copies of your brilliant novel, you're allowed to ask them if the copies were paper or electronic, where they bought the paper, what type of binding they used, and so on, and they don't get to cut you off by saying "the statute says 'copy,' and you can't go one inch past the statute." How exactly the infringement took place is relevant and discoverable. Here, Illumina is allowed to know, as a factual matter, what materials Defendants used to carry out the alleged infringement.

In addition, all this aside, Illumina argues that there is evidence that one of the enzymes Defendants used was Illumina's and is an embodiment of their patented claim. This makes the identification of the enzymes Defendants used relevant to Illumina's allegations of copying (and therefore willfulness).

Accordingly, the Court finds that the requested discovery is relevant[1] to Illumina's asserted claims. It might be relevant to other things too, but that does not undercut its relevance here. The Court orders Defendants to answer rog 16 and to produce non-privileged documents in response to RFPs 103 and 104.

**IT IS SO ORDERED.**

Dated: December 1, 2020

THOMAS S. HIXSON
United States Magistrate Judge

---

[1] In the letter brief, Defendants did not argue that this discovery, if relevant, is somehow disproportional. At the hearing they made the assertion that it was disproportional, but they did not substantiate that argument.

9