UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ILLUMINA INC., et al.,<br><br>　　　　Plaintiffs,<br><br>　v.<br><br>BGI GENOMICS CO., LTD., et al.,<br><br>　　　　Defendants. | Case No. 20-cv-01465-WHO<br><br>**ORDER GRANTING MOTION FOR LEAVE TO AMEND**<br><br>Re: Dkt. Nos. 341, 342, 360, 375, 384 |

　　Plaintiffs Illumina, Inc. and Illumina Cambridge Ltd. (collectively "Illumina") move for leave to amend their infringement contentions to add a literal infringement theory that the CoolMPS product infringes claims 1, 7, and 17 of its '025 patent. Defendants BGI Genomics Co., Ltd., BGI Americas Corp., MGI Tech Co., Ltd., MGI Americas, Inc., and Complete Genomics Inc. (collectively "BGI") oppose the motion, arguing that Illumina did not diligently seek leave to amend and that amendment would unfairly prejudice BGI. For the reasons discussed below, I conclude that Illumina has good cause to amend, that it acted with reasonable diligence in seeking leave to amend, and that amendment would not unduly prejudice BGI. Accordingly, Illumina's motion for leave to amend is GRANTED.

## BACKGROUND

　　On April 3, 2020, Illumina served BGI with its preliminary infringement contentions of BGI's sequencers and associated reagent products using StandardMPS and CoolMPS technology ("Accused Products"). Dkt. No. 352 ("Mot.") at 2, 13. Illumina's preliminary infringement contentions accused BGI's StandardMPS sequencing reagent of literally infringing claim 1 of Illumina's U.S. Patent No. 10,480,025 (the "'025 Patent"). Mot. at 2. Claim 1 of the '025 Patent states,

> "A nucleotide or nucleoside molecule having a ribose or deoxyribose sugar moiety and a base linked to a detectable label via a cleavable linker, wherein the sugar moiety comprises a protecting group

> attached via a 3' oxygen atom, and wherein said protecting group comprises an azido group that can be modified or removed to expose a 3' OH group."

Dkt. No. 1-3 at 51. Specifically, Illumina asserted that the StandardMPS product with a cleavable linker between the nucleotide and the label literally infringed claim 1. Dkt. No. 211-12 at 1. At the time, Illumina only accused BGI's CoolMPS sequencing reagent of infringing claims 1, 7, and 17 under the doctrine of equivalents ("DOE") theory because Illumina did not believe that the CoolMPS product contained cleavable linking structures.[1] Mot. at 2–3; *see* Dkt. No. 211-12 at 1–5, 17, 31. Illumina asserted that the antibodies in CoolMPS are functionally equivalent to the claimed cleavable linkers. Dkt. No. 211-12 at 2. In support of its DOE theory, Illumina referenced an article by BGI employees titled, *CoolMPS™: Advanced Massively Parallel Sequencing Using Antibodies Specific to Each Natural Nucleobase* (Feb. 20, 2020) (the "CoolMPS Paper"). Dkt. No. 343-20.

As discovery proceeded, Illumina, Inc. filed another case against a defendant in this case, MGI Tech Co., Ltd., and three other MGI entities, in the United Kingdom (the "UK case") alleging infringement of its European patents, which involve similar subject matter to the Illumina patents here. Dkt. No. 341-6 ("Hopewell Decl.") ¶¶ 3–4. Illumina's UK outside counsel and in-house counsel were under a protective order that prohibited them from sharing evidence in the UK case with others, including Illumina's US outside counsel. Hopewell Decl. ¶ 6.

On June 3, 2020, in the UK case, BGI submitted a confidential Product and Process Description ("PPD"), a technical document which outlined each Accused Product and provided a description and diagram of the CoolMPS system's chemical structures. Hopewell Decl. ¶ 4. The unredacted version of the PPD suggests that there were cleavable linking structures between CoolMPS antibodies and dyes. Dkt. No. 352-10 ("Mot., Ex. 18") ¶ 5.4.

On November 5, 2020, Illumina filed an outline of its arguments for the UK trial ("UK Trial Plan"). Dkt. No. 361-3 ("Ridgway Decl., Ex. B"). In the Trial Plan, Illumina asserted (1) a literal infringement theory where "the term 'cleavable linker' is not limited to covalent bonds and

---

[1] Illumina's expert, Dr. Floyd Romesberg dropped the allegation that CoolMPS infringed claim 9 and its dependent claims. Dkt. No. 361-5 ("Romesberg Expert Rep.") ¶¶ 231–35.

encompasses systems that use e.g. antibody binding"; and (2) a secondary theory of infringement where even if the term "cleavable linker" requires a covalent bond, CoolMPS infringes because it has a "cleavable element (the $N_3$ containing group) within the covalently bonded structure" and "the $N_3$ group would allow the linker to be cleaved using phosphine." Ridgway Decl., Ex. B ¶¶ 129–30, 143–45. For its foreign cases, Illumina Cambridge Ltd. filed an application in a related action, under 28 U.S.C. § 1782, seeking information from BGI entities. *See In re Application of Illumina Cambridge Ltd.*, No. 19-MC-80215-WHO (TSH) (N.D. Cal.). As part of that action, Illumina took a 30(b)(6) deposition of Dr. Chongjun Xu, the Senior Director of Research at Complete Genomics Inc., on July 21, 2020. *See* Dkt. Nos. 352-4, 360-4 ("Xu Depo. Tr.").

On March 5, 2021, Illumina's UK outside counsel provided a redacted version of the PPD to Illumina's in-house counsel, who forwarded it to Illumina's US outside counsel. Hopewell Decl. ¶ 10. That same day, Illumina's US outside counsel emailed BGI requesting that it produce an unredacted version of the PPD. Dkt. No. 352-2 at 7 ("Root Email, Mar. 5, 2021"). On March 16, BGI produced an unredacted version of the PPD. Dkt. No. 352-2 at 4–5 ("Fernands Email, Mar. 16, 2021"). The next day, during his deposition, Dr. Snezana Drmanac confirmed that the structures disclosed in the unredacted PPD were cleavable linking structures. Dkt. No. 352-6 ("Drmanac Depo. Tr.") at 282:19–283:13; 286:11–287:1.

On March 21, Illumina emailed BGI requesting additional documents about the linking structures and on March 24, Illumina informed BGI that it planned to move to amend its infringement contentions and requested a meet and confer if BGI opposed. Dkt. No. 352-2 at 4 ("Root Email, Mar. 21, 2021"); Dkt. No. 341-14 at 3–4 ("Root Email, Mar. 24, 2021"). The next day, on March 25, BGI rejected Illumina's request for additional documents and asserted that the linking structures were irrelevant to any of Illumina's discovery requests. Dkt. No. 352-2 at 2–3 ("Naravage Email, Mar. 25, 2021"). Fact discovery closed on March 26. On March 31, the parties met and conferred; BGI objected to amendment. Mot. at 5. On April 7, BGI indicated that it would oppose the motion based on lack of diligence and undue prejudice. Dkt. No. 341-11 at 1. After continued back-and-forth, on April 13, 2021, Illumina filed this motion for leave to amend.

**LEGAL STANDARD**

"Patent Local Rule 3 requires patent disclosures early in a case and streamlines discovery by replacing the series of interrogatories that parties would likely have propounded without it." *ASUS Computer Int'l v. Round Rock Research, LLC*, No. 12-CV-02099-JST, 2014 WL 1463609, at *1 (N.D. Cal. Apr. 11, 2014) (internal quotation marks and alterations omitted). The disclosures required under Patent L.R. 3 are designed "to require parties to crystallize their theories of the case early in the litigation and to adhere to those theories once they have been disclosed." *Nova Measuring Instruments Ltd. v. Nanometrics, Inc.*, 417 F. Supp. 2d 1121, 1123 (N.D. Cal. 2006). "They are also designed to provide structure to discovery and enable the parties to move efficiently toward claim construction and the eventual resolution of their dispute." *Golden Bridge Tech. Inc. v. Apple, Inc.*, No. 12-CV-04882-PSG, 2014 WL 1928977, at *3 (N.D. Cal. May 14, 2014) (internal quotation marks omitted); *see also O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1365-66 (Fed. Cir. 2006) ("The local patent rules in the Northern District of California [require] both the plaintiff and the defendant in patent cases to provide early notice of their infringement and invalidity contentions, and to proceed with diligence in amending those contentions when new information comes to light in the course of discovery. The rules thus seek to balance the right to develop new information in discovery with the need for certainty as to the legal theories.").

Patent L.R. 3-6 permits amendment of infringement contentions "only by order of the Court" and only upon a "timely showing of good cause." Patent L.R. 3-6. The rule lists several examples of "circumstances that may, absent undue prejudice to the non-moving party, support a finding of good cause." *Id.* These include:

> (a) A claim construction by the Court different from that proposed by the party seeking amendment; (b) Recent discovery of material, prior art despite earlier diligent search; and (c) Recent discovery of nonpublic information about the Accused Instrumentality which was not discovered, despite diligent efforts, before the service of the Infringement Contentions.

*Id.* In determining whether a party has established good cause, courts first look to whether the party has shown that it has acted with diligence. *See O2 Micro*, 467 F.3d at 1366. "[I]f the moving

4

1    party was not diligent, the inquiry should end." *Apple Inc. v. Samsung Electronics Co. Ltd.*, No.
2    12-CV-0630-LHK (PSG), 2013 WL 3246094, at *1 (N.D. Cal. June 26, 2013) (internal quotation
3    marks omitted).  On the other hand, "[i]f the court finds that the moving party has acted with
4    diligence, it then must determine whether the non-moving party would suffer prejudice if the
5    motion to amend were granted." *Id.* (internal quotation marks omitted).

## DISCUSSION

Illumina argues that there is good cause to amend its infringement contentions under Patent L.R. 3-6 because it only recently discovered confidential information about CoolMPS, an Accused Product, despite an earlier diligent search. BGI opposes the motion, asserting that Illumina was not diligent in discovering the basis for amendment and that amendment would unduly prejudice BGI. BGI does not contend that Illumina was not diligent in seeking leave to amend. As discussed in more detail below, I conclude that Illumina has acted with reasonable diligence and that amendment would not unduly prejudice BGI.

### I. DILIGENCE

BGI contends that Illumina was not diligent in discovering the basis for amendment—the cleavable linking structures in CoolMPS. Dkt. No. 361 ("Opp.") at 11–22. "[T]he diligence required for a showing of good cause has two phases: (1) diligence in discovering the basis for amendment; and (2) diligence in seeking amendment once the basis for amendment has been discovered." *Positive Techs., Inc. v. Sony Elecs., Inc.*, No. 11-CV-2226-SI, 2013 WL 322556, at *2 (N.D. Cal. Jan. 28, 2013). "In considering the party's diligence, the critical question is whether the party could have discovered the new information earlier had it acted with the requisite diligence." *Apple Inc. v. Samsung Elecs. Co.*, No. 12-CV-00630-LHK, 2012 WL 5632618, at *2 (N.D. Cal. Nov. 15, 2012) (internal quotation marks and alterations omitted).

#### 1. Whether Illumina was Reasonably Diligent

According to Illumina, it first learned on March 5, 2021 about the PPD, which had a diagram of the chemical structures in the CoolMPS product, when its UK counsel sent a redacted copy to Illumina's in-house counsel, who then forwarded it to its US counsel. Mot. at 4, 14. It did not discover that the CoolMPS product had cleavable linking structures until March 16, 2021,

5

when BGI sent Illumina the unredacted copy of the PPD. On March 17, 2021, BGI's scientist, Dr. Drmanac, confirmed the existence of such linking structures during her deposition. Mot. at 14; Drmanac Depo. Tr. at 282:19–283:13; 286:11–287:1. But BGI contends that Illumina either knew or should have known the basis for amendment from publicly available information, such as the CoolMPS Paper, the UK Trial Plan, or multiple depositions of BGI's scientists. Opp. at 11–22. Illumina says that these "signposts" are "merely needles in a haystack that were too vague to fairly put Illumina on notice" and none identified the chemical structure of the linkers until the production of the unredacted PPD. Reply at 2.

### a.    CoolMPS Paper

BGI first highlights the February 20, 2020 CoolMPS Paper, which Illumina relied on in its preliminary infringement contentions, that "discloses a linker between the antibody and the label" and "refers to a publication that discusses using cleavable linkers" in the same section that discusses the creation of the linkers in CoolMPS.[2] Opp. at 12; Dkt. No. 343-20 at 2–4. Specifically, BGI emphasizes one sentence in the CoolMPS Paper, which explained the linkers between the fluorescent label and the antibody— "Antibodies were labeled by reaction of available free amines on the protein with NHS ester activated fluorescent dyes (14)." Opp. at 4; Dkt. No. 343-20 at 3. Reference 14 is an article titled, *A Practical Approach to Crosslinking*, 17 Molecular Biology Reports 167 (1993), authored by Mattson et al. ("Mattson Article"). Dkt. No. 361-7 ("Opp., Ex. E"). According to BGI, "Mattson describes how to use the NHS chemistry to link moieties to proteins such as antibodies" and "describes the cleavability of the linker as being one [out of the six] characteristics one should consider." Opp. at 4–5; Opp., Ex. E at 168–69.

As a result, BGI contends that the CoolMPS paper "provides evidence that CoolMPS was

---

[2] On May 27, 2021, BGI filed a motion for leave to file supplemental evidence in further support of its opposition. Dkt. No. 384. BGI sought to file an excerpt of Illumina's expert, Dr. Romesberg's deposition transcript, where Dr. Romesberg testified that a figure in the CoolMPS Paper indicated that CoolMPS has a cleavable linker. *Id.* Illumina opposed the motion and argued that the deposition excerpt is irrelevant. *See* Dkt. No. 385. I reviewed the excerpt. At the time of his deposition, Dr. Romesberg had studied the confidential UK PPD and relied on the PPD in his expert report. *Id.* at 2. Dr. Romesberg did not testify that someone would be able to tell that the figure represented cleavable linkers from the face of the CoolMPS Paper alone, without access to the PPD as Dr. Romesberg did. *Id.* Because the deposition excerpt is irrelevant, BGI's motion is DENIED.

1  using a linker and that linker very well could have been one that could be cleaved through
2  chemical means." Opp. at 5. Illumina disagrees and asserts that the single sentence in the
3  CoolMPS Paper failed to disclose that the linking structures in CoolMPS were cleavable. Reply
4  at 3. I agree. The reference to the Mattson article, which does not mention CoolMPS and only
5  mentions that some linkers may be cleavable, does not indicate that the CoolMPS's linking
6  structures are. *Id.*

### b. Dr. Xu Deposition

Next, BGI points to the July 2020 deposition of Dr. Chongjun Xu, where he testified that MGI "links up the dye to the antibody" in CoolMPS. Xu Depo. Tr. 70:13–14. BGI contends that Dr. Xu's answer put Illumina on notice about the linkers in CoolMPS and that Illumina's failure to ask Dr. Xu about the cleavable nature of the linkers is evidence of lack of diligence. Opp. at 13. But Illumina asserts that Dr. Xu's answer implied that "the label is connected directly to the antibody without any linker" and that it understood from the answer that the label in BGI's CoolMPS technology was attached to the antibody without the use of any cleavable linking structures. Mot. at 8. Further, when asked what the differences were between CoolMPS and StandardMPS, Dr. Xu testified that CoolMPS uses "the native dNTP" or the "DNA base" that is "complete in nature with no modifications, no dye, no linker" and "the label is on the antibody." Dkt. No. 352-4 at 24:12–25:7. In contrast, StandardMPS had a label "through a linker attached to the base of the dNTP." *Id.* at 72:1–7. Accordingly, Dr. Xu's testimony was insufficient to put Illumina on notice of the existence of any cleavable linking structures in CoolMPS.

Similarly, Illumina's failure to ask Dr. Matt Callow or Dr. Drmanac (before the March 17, 2021 deposition) about how the labels were linked to the antibodies is not evidence of lack of diligence. Opp. at 22. It simply shows Illumina's understanding at the time, based on BGI's document production and discovery responses, that the cleavage was performed by the antibody not linking structures. Reply at 6. That Illumina did not ask Dr. Callow or Dr. Drmanac about the nature of the linking structures does not weigh against finding diligence.

### c. UK Trial Plan

Finally, BGI contends that the PPD is "wholly redundant" of the November 9, 2020 UK

Trial Plan, which outlined one of Illumina's infringement theories about CoolMPS in the UK trial and is the same theory that Illumina wants to assert in this case. Opp. at 7–9. Specifically, in the UK Trial Plan, Illumina asserted that CoolMPS's "cleavable linker," an azide, $N_3$, which attaches the labels to the antibodies in CoolMPS products, infringed its UK patents. Ridgway Decl., Ex. B ¶ 143–45, *see* Romesberg Expert Rep. ¶ 187–88 (Illumina's expert asserting that CoolMPS has a nearly identical linker structure as StandardMPS and is also cleaved at the $N_3$). BGI contends that because Illumina's expert does not rely on the identity of the atoms to assert that CoolMPS has a cleavable linker, Illumina could have advanced its new infringement theory back in November 2020 and did not need the exact diagram of CoolMPS found in the PPD to assert its theory. Opp. at 14.

Illumina responds that it would be unreasonable to expect its U.S. counsel to monitor all filings from approximately 29 litigations throughout the world relating to BGI's use of azido chemistry.[3] Reply at 4. Under the circumstances of this case, I agree. Illumina's UK outside counsel and in-house counsel were under a protective order that prohibited them from sharing evidence in the UK case with others, including Illumina's US outside counsel. Hopewell Decl. ¶ 6. It is unreasonable to expect a party's foreign outside lawyers, under a protective order, to send every filing in a foreign litigation to its U.S. outside counsel. Reply at 5. While BGI contends that the UK Trial Plan was a public document, Illumina clarifies that the document was initially submitted to the UK Court as completely confidential and only became public after defendants, the MGI parties, prepared a redacted copy to be used during trial a few weeks later.

---

[3] Illumina makes other arguments that are less persuasive. It argues that the one paragraph in the 113-page UK Trial Plan, which BGI contends should have put Illumina on notice, was vague and that if had monitored the UK litigation, it would not have known about the basis for amendment. Reply at 4–5. But the UK court does find there are cleavable linking structures in CoolMPS. Reply, Ex. 3 ¶ 320 (finding the "fluorescent label is linked to the base part of the nucleotide by a cleavable linker (consisting of the covalent linker linking the label to the antibody and the antibody itself linking that to the base)"). The theory asserted in the Trial Plan is not vague and is similar to the theory Illumina proposes to assert now. And it is also reasonable to expect a party to know the general theories it alleges against the same defendant and the same product, even across multiple litigations occurring around the same time.

8

1   Dkt. No. 361-1 ("Ridgway Decl.") at 1.  Illumina's failure to find the pertinent document in a
2   foreign litigation where a protective order was in place is not evidence that Illumina was not
3   reasonably diligent.
4         BGI's cases are inapposite; they involve parties who moved to amend after depositions that
5   were conducted years after the start of the case or the start of discovery.  *See KlausTech, Inc. v.*
6   *Google, Inc.*, No. 10-CV-05899-JSW (DMR), 2017 WL 4808558 at *4 (N.D. Cal. Oct. 25, 2017)
7   (finding lack of diligence because the moving party waited two years to conduct a 30(b)(6)
8   deposition, from which it discovered the basis for amendment); *Karl Storz Endoscopy-America,*
9   *Inc. v. Stryker Corp.*, No. 09-CV-00355-WHA, 2011 WL 5574807, at *1 (N.D. Cal. Nov. 16,
10  2011) (finding lack of diligence where plaintiff did not seek to depose any of defendant's technical
11  witnesses until four years into the case and six months after the claim construction order was
12  issued); *Google, Inc. v. Netlist, Inc.*, No. 08-CV-4144-SBA, 2010 WL 1838693, at *2 (N.D. Cal.
13  May 5, 2010) (denying leave to amend because the moving party did not conduct the two 30(b)(6)
14  depositions until more than a year since the start of discovery and sought to quadruple the number
15  of claims by adding six new infringement claims).  In this case, the basis for amendment was a
16  confidential document in a foreign litigation, not a deposition that Illumina delayed in conducting.
17  As explained above, none of BGI's produced documents or depositions were sufficient to lead to
18  the discovery of the cleavable linking structures.  Accordingly, Illumina was reasonably diligent in
19  searching for the information about CoolMPS's cleavable linking structures.

### 2. Whether BGI Violated Patent Local Rule 3-4(a)

21  Illumina asserts that it could not have discovered that the CoolMPS product had cleavable
22  linking structures because BGI had unfairly concealed the information until the end of discovery.
23  Mot. at 13.  In particular, Illumina argues that BGI violated Patent L.R. 3-4 because BGI failed to
24  produce any document showing the complete structure of CoolMPS, an Accused Product.  Mot. at
25  7.  Patent L.R. 3-4 requires the party opposing claim infringement to produce "documentation
26  sufficient to show the operation of any aspects or elements of an Accused Instrumentality
27  identified by the patent claimant in its Patent L.R. 3-1(c) chart."
28        Illumina argues that BGI did not produce any such document in response to Illumina's

1 requests for documents "reflecting the chemical structure of the labeled and unlabeled nucleotides
2 and labeled antibodies used in each model of sequencers included in the Accused Products,"
3 documents "describing the manufacturing of such labeled antibodies," or documents relating to the
4 "development of the Accused Products." Mot. at 8. Instead, the documents BGI did produce
5 suggested that there were no cleavable linking structures in CoolMPS. Mot. at 11–13. When
6 Illumina asked whether BGI had previously disclosed the CoolMPS cleavable linking structures
7 prior to the production of the PPD, BGI refused to respond to the question. Dkt. No. 341-16
8 ("Perlson Email, April 7, 2021").

9 BGI contends that "Illumina's failure to identify any literal infringement theory relating to
10 CoolMPS for the claim limitations at issue here framed BGI's Patent L.R. 3-4(a) document
11 production." Opp. at 16. BGI argues that it was not required under the Patent Local Rules to
12 identify "any documents showing the connection between the antibody and the dye comprised
13 cleavable linking structures" because Illumina had never accused the structure between the
14 antibody and the label of infringement. *See* Opp. at 15.

15 I am not persuaded by BGI's argument. It had notice because claim 1 of the '025 patent
16 specifically refers to a "cleavable linker" and so BGI should have produced detailed information
17 on CoolMPS's exact structure. *Id.* Illumina's Patent L.R. 3-1(c) chart outlined the DOE theory
18 that CoolMPS infringed claim 1, 7, and 17 '025 patent. Dkt. No. 211-12 at 1–4. Illumina also
19 asserts that it properly and sufficiently put BGI on notice about producing documents related to
20 linking structures in CoolMPS because Illumina identified CoolMPS "fluorescently labeled
21 antibodies" in its infringement contentions, which "necessarily include the linking structures
22 between the label and the antibody." Reply at 8.

23 BGI contends that it was not obliged to produce the PPD because it is a foreign document
24 in a foreign litigation, it is not a document kept in the regular course of business by BGI, and as
25 Illumina asserts, it was deemed confidential and restricted to use only in the UK proceedings.
26 Opp. at 14. BGI also maintained its argument that the PPD was irrelevant when it reluctantly
27 produced the unredacted copy of the PPD. Dkt. No. 352-2 ("Fernands Email, March 16, 2021") at
28 4–5. Yet, as Illumina aptly summarizes, BGI "cannot credibly argue that one document prepared

1    by foreign counsel is highly relevant such that Illumina lacked diligence by not searching it out
2    from another litigation in a foreign jurisdiction, while also arguing that another document prepared
3    by Defendants' own counsel for the same foreign litigation is somehow so irrelevant that
4    Defendants need not have produced it or any other documents showing the chemical structure at
5    issue." Reply at 6.  Regardless, BGI's failure to produce any document about CoolMPS's
6    chemical structure pursuant to Patent L.R. 3-4(a) meant that Illumina could not have discovered
7    the basis for amendment with requisite diligence.

## II.  PREJUDICE

BGI contends that Illumina's proposed amendment will prejudice BGI. Opp. 22–23.  It asserts that allowing amendment would "(1) preclude BGI from exploring Illumina's new literal infringement theory with any of Illumina's fact witnesses and via written discovery or (2) require reopening discovery, ultimately increasing the scope of litigation and further delaying resolution of the case."  Opp. at 23.  I do not find that prejudice exists but will allow BGI to remedy any material problem caused by the amendment.

Illumina's proposed amendment does not add any new patents, new products, or new claims.  Mot. at 15.  Although fact discovery closed on March 26, 2021 and BGI has already deposed Illumina's '025 patent inventors, the proposed amendment concerns BGI's own product; it does not have an obvious need to interview Illumina's witnesses for information about CoolMPS.  Opp. at 23; Reply at 14.  That said, if BGI thinks it necessary to reopen or take any depositions in light of the amendment, it should meet and confer over the identity of the proposed deponents and length of the depositions; if there is disagreement, the parties should submit a joint dispute letter of five pages or less.

Illumina asserts that amendment will not give rise to new claim construction disputes because BGI has conceded that CoolMPS has cleavable linking structures.  Reply at 15.  Both Dr. Drmanac and Dr. Metzker testified that the linking structures between the antibody and the label in CoolMPS are cleavable.  *See* Drmanac Depo. Tr. at 282:19–283:13, 286:11–287:1; Dkt. No. 381-2 ("Metzker Expert Rep.") ¶¶ 24, 62–63.  BGI's vague statements about how it "likely would have taken a different approach during claim construction" or "may have pursued a different strategy

with regard to the '025 patent" are unpersuasive. Opp. at 23; *see Finjan, Inc. v. Symantec Corp.*, No. 14-CV-02998-HSG (JSC), 2017 WL 4025219, at *2–*4 (N.D. Cal. Sept. 13, 2017) (finding no prejudice where the non-moving party did not specify "what depositions or written discovery it needs or why a further claims construction would be necessary."). During oral argument on June 2, 2021, BGI's counsel argued that claim construction would be necessary because there are questions about the definition of a "cleavable linker" (e.g., whether it encompasses a linker that is indirectly or directly attached to the antibody). If the parties meet and confer and believe claim construction is necessary, the parties may request another claim construction hearing. If they disagree, they should send a joint letter

BGI has been aware of Illumina's proposed amendment since mid-March 2021 and has been aware of Illumina's DOE theory that CoolMPS infringes claims 1, 7, and 17—the same claims in the proposed amendment—since April 2020. BGI's expert, Dr. Metzker, has already addressed the literal infringement theory in his expert repot by using the same argument against Illumina's DOE claims. Metzker Expert Rep. ¶¶ 24, 62–63. Although expert discovery closed on May 28, 2021, BGI has reserved the right to amend Dr. Metzker's report to fully address the literal infringement theory and can do so. *See id.* ¶ 63.

There are more than five months left until trial. This gives BGI plenty of time to address Illumina's literal infringement theory. Accordingly, I conclude that amendment would not unduly prejudice BGI.

### III.   MOTIONS TO SEAL

Under Ninth Circuit law a party must demonstrate "compelling reasons" to seal any motion-related filings where "the motion at issue is more than tangentially related to the underlying cause of action." *Ctr. for Auto Safety v. Chrysler Grp.*, 809 F.3d 1092, 1096–99 (9th Cir. 2016). Here, the relevant motion is a motion for leave to amend Illumina's infringement contentions, which is "more than tangentially related to the underlying cause of action." *Id.* Accordingly, the "compelling reasons" standard applies. What constitutes a compelling reason is "left to the sound discretion of the trial court." *Nixon v. Warner Commnc'ns, Inc.*, 435 U.S. 589, 599 (1978). However, the Ninth Circuit has highlighted that examples include "the use of records

1  to gratify private spite, promote public scandal, circulate libelous statements, or release trade

2  secrets." *Kamakana v. City & Cty. of Honolulu*, 447 F.3d 1172, 1179 (9th Cir. 2006).

3  The parties have filed three motions to seal. *See* Dkt. Nos. 341, 360, 375. The motion to file under seal Illumina's motion for leave to amend and accompanying exhibits 5–7 and 17–18 is GRANTED. Dkt. No. 341. The information BGI requests to seal contains or makes ascertainable certain trade secrets and confidential information regarding BGI's products and research & development in the highly competitive DNA sequencing industry. *See* Dkt. Nos. 351, 352. The clerk shall UNSEAL the unredacted documents at Dkt. Nos. 341-6, 341-14, and 341-16, which BGI did not request to be sealed.

The motion to file under seal accompanying exhibits C, G, and L to BGI's opposition is GRANTED. Dkt. No. 360. The information BGI requests to seal is comprised of confidential technical and development information, such as details of BGI's products and ongoing research & development. *Id.* at 2. The information is also comprised of business information that might harm BGI's competitive standing, such as BGI's suppliers. *Id.*

The motion to file under seal Illumina's accompanying exhibits 1 and 4 to its reply is GRANTED because the information BGI requests to seal is what BGI believes are trade secrets and business information that might harm its competitive standing. *See* Dkt. Nos. 375, 380, 381. The clerk shall UNSEAL the unredacted copy of Illumina's reply at Dkt. No. 375-4, which BGI did not request to be sealed.

This resolves the motions at Dkt. Nos. 341, 360, and 375.

## CONCLUSION

For the reasons stated above, Illumina's motion for leave to amend is GRANTED. If BGI wants further depositions or a claim construction hearing, it should meet and confer with Illumina  If there is a dispute, BGI and Illumina should file a joint discovery letter by June 21, 2021.

**IT IS SO ORDERED.**

Dated: June 11, 2021

William H. Orrick
United States District Judge

13